UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

--------------------------------------------------------------- x

STACEY WEZENTER,              :

           :

      Plaintiff,      :

           :

    v.        :      23-CV-474(SFR)

           :

JUSTIN MARSHALL ET AL.,      :

           :

      Defendants.     :

--------------------------------------------------------------- x

## MEMORANDUM AND ORDER

Plaintiff Stacy Wezenter alleges violations of her federal civil rights and state law based on the actions of New Haven police officers who erroneously entered her apartment and placed her in handcuffs in April 2023. Defendants Justin Elicker, Karl Jacobson, and City of New Haven ("City Defendants"), and Defendants Justin Marshall, Leonardo Soto, Samantha Romano, Mark Decarvalho, Carlos Conceicao, John Folch, Christopher Boyle, John Moore, James Paxton, Jessica Stone, and Marlena Ofiara ("Police Defendants") have filed separate motions seeking summary judgment on the claims alleged in the Amended Complaint. Wezenter also moves for an extension of time *nunc pro tunc* to file her responses to the motions for summary judgment. For the reasons that follow, I grant the motion for extension of time and both motions for summary judgment.

## I.    <u>BACKGROUND</u>

### A.    **Factual Background**

This case stems from an investigation conducted by New Haven Police Department Detective Leonardo Soto. As part of his duties with the Internet Crimes Against Children Task Force, in late November 2022, Soto discovered that an individual had sent, received, and

1



Interior common hallway of 590 East Street, viewed from the second floor landing. Wezenter's apartment is accessed by the stairway at left. The two doors at right provide access to Yergeau's apartment. The front entrance is visible down the stairs at the bottom center-right of the image. ECF No. 66-9, Ex. B, at 0:00:51 (on file with court).

accessed child pornography. Pl.'s 56(a)2 St., ECF No. 76 ¶ 2. On March 23, 2023, Soto received information that the IP address identified that individual as Timothy Yergeau, with an address in New Haven listed as 590 East Street, Unit 2. *Id.*; ECF No. 66-1, at 5. On March 29, 2023, Soto visited 590 East Street to attempt to confirm Yergeau's address. Pl.'s 56(a)2 St. ¶ 3.[1]

---

[1] Wezenter does not admit any facts related to Soto's personal investigation of 590 East Street but instead notes that she is "without knowledge and leaves Defendant to its proof." Pl.'s 56(a)2 St. ¶¶ 3-4. She does not, however, appear to contest the veracity of Defendants' Exhibit B, a body camera video dated March 29, 2023, purporting to show Soto investigating 590 East Street and attempting to make contact with its residents, nor does Wezenter provide any evidence contradicting that video. ECF No. 66-9, Ex. B (on file with court). I will therefore deem these facts admitted for the purpose of the summary judgment motions. *Miron v. Town of Stratford*, 976 F. Supp. 2d 120, 127 (D. Conn. 2013) ("Where a party fails to appropriately deny material facts set forth in the moving party's 56(a)1 statement, and where those facts are supported by evidence in the record, those facts are deemed to be admitted.").





Wezenter and Yergeau's mailboxes. The mailboxes are located just outside the entrance of the building. Wezenter's mailbox is marked "590 East St Apt 1"; Yergeau's is marked "590 East St #2." ECF Nos. 66-2, 66-3.

The interior common area of 590 East Street contained three unmarked doors; two doors on the second floor, which Soto encountered after ascending a flight of stairs directly inside the building entrance, and a door on the third floor up another set of stairs. *Id.* ¶ 4; ECF No. 66-1, at 5. Soto knocked on each door but received no response. Pl.'s 56(a)2 St. ¶ 4. Outside the building, there were two mailboxes. *Id.* ¶ 5. Wezenter's mailbox included her name and the names of her children and was marked "590 East St Apt. 1." *Id.* ¶ 6; ECF No. 66-2. Yergeau's mailbox was labelled "590 East St. #2." Pl.'s 56(a)2 St. ¶ 6; ECF No. 66-3. Wezenter's actual address, not reflected on the mailbox, was "590 East Street, Third Floor, Left." Pl.'s 56(a)2 St. ¶¶ 7-8. Once inside 590 East Street, there was no visible connection to the businesses that occupy the first floor of the building, and there were no other markings to identify the individual units. *See id.* ¶¶ 9, 38. According to Defendants, following his investigation, Soto "concluded that [Wezenter's] mailbox, which identified [her] residence as Apartment #1, referred to the two unmarked doors in the hallway" on the second floor, while "Yergeau's residence, Apartment #2," was on the third floor. ECF No. 63-1, at 13.

Six days later, on April 4, 2023, Soto obtained a search and seizure warrant for Yergeau's apartment at 590 East Street, Unit 2, after submitting an affidavit and application co-signed by Detective Samantha Romano. Pl.'s 56(a)2 St. ¶ 11. The application included a description of Yergeau's appearance and instructions on how to reach his unit: "590 East Street Unit 2, New Haven CT, is [a] two level apartment building with a white door leading to a common hallway. From the common hallway, walk up two flights of stairs leading to a wood door that is unmarked." ECF 66-7, at 2.

On April 6, 2023, at approximately 6:00 AM, a team of officers arrived at 590 East Street to execute the search warrant. Pl.'s 56(a)2 St. ¶ 13. Six officers, Lieutenant Justin

4

Marshall, Detective Soto, Detective Mark DeCarvalho, Detective John Folch, Detective Christopher Boyle, and Detective John Moore ("Entry Team"), entered the building to search Yergeau's apartment. *Id.* ¶ 14. Detective Romano, Detective James Paxton, Detective Jessica Stone, Officer Marlena Ofiara, and Officer Carlos Conceicao remained outside to guard the perimeter. *Id.* ¶¶ 14-15.

The Entry Team proceeded up two flights of stairs to the third floor, as indicated in the warrant, to the apartment that they believed belonged to Yergeau. *Id.* ¶ 16.[2] After briefly knocking and announcing themselves, Folch made forcible entry utilizing a one-man battering ram. *Id.* ¶ 17.[3] The team quickly placed Wezenter in handcuffs, located Wezenter's daughter in her bedroom (where she was required to stay), and found Wezenter's minor son, still asleep, in Wezenter's bedroom. *Id.* ¶¶ 18-20. The officers left him there to sleep, and he apparently slept through the entire incident. *Id.* ¶ 19; ECF No. 66-4, at 75.

After asking Wezenter and her daughter about the location of Yergeau, the officers promptly realized they were in the wrong apartment and uncuffed Wezenter. Pl.'s 56(a)2 St. ¶¶ 21-22. Wezenter was in handcuffs for less than two minutes, and her daughter was allowed out of her bedroom when Wezenter was released from the handcuffs.[4] *Id.* ¶ 23, 25. Boyle

---

[2] Wezenter marks this statement as "admitted in part, denied in part," and directs the reader to the "following section." Pl.'s 56(a)2 Stat. ¶ 16. But in the following section, Wezenter notes only that she was not the subject of the search warrant, nor was her apartment the "intended apartment" of the search warrant. *Id.* at 9. These statements do not contradict the otherwise undisputed fact that the officers followed the instructions in the warrant, nor do they contradict any belief on the part of the officers that the apartment belonged to Yergeau.

[3] Wezenter admits this fact but notes that she did not hear the officers at the time of entry. Pl.'s 56(a)2 St. ¶ 17.

[4] Wezenter "admits in part" that she was in handcuffs for less than two minutes but does not describe which part of this statement—clearly supported by time stamps in the body cam video provided by Defendants—she disputes. ECF No. 66-9, Ex. I, at 0:01:54-0:03:46 (on file with

remained with Wezenter and her daughter while the other detectives executed the search warrant at Yergeau's apartment. *Id.* ¶ 26. Marshall then returned to Wezenter's apartment, where he apologized for the mistake. *Id.* ¶¶ 27-28, 31. Wezenter requested that the New Haven Police Department repair her door, to which Marshall agreed. *Id.* ¶ 32. Marshall also provided his contact information and offered to connect Wezenter or her daughter with services related to trauma stemming from the incident. *Id.* ¶ 39. A temporary repair was made to Wezenter's door that day, and the door was fully replaced six weeks later. *Id.* ¶ 42.

### B.    Procedural History

Wezenter filed her initial Complaint on April 16, 2023, ECF No. 1, and an Amended Complaint on April 21, 2023, ECF No. 10. The Police and City Defendants filed separate Answers on July 24, 2023. ECF Nos. 29, 31. Wezenter filed a motion to amend the Amended Complaint on January 25, 2024, which the Court[5] granted on April 17, 2024. ECF Nos. 34, 36. Wezenter filed her second Amended Complaint on April 18, 2024. Am. Compl., ECF No. 37. The Police Defendants filed an updated Answer on June 17, 2024. ECF No. 48.

Wezenter's first attorney filed a motion to withdraw on September 11, 2024. ECF No. 49. The court held a hearing on the matter and then granted the motion on September 26, 2024. ECF Nos. 55-56. Attorney Levin entered an appearance on behalf of Wezenter on October 30, 2024. ECF No. 57.

---

court). I will therefore deem this fact admitted for the purpose of the summary judgment motions. *Miron*, 976 F. Supp. 2d at 127.

[5] This case was initially assigned to the Honorable Sarala V. Nagala and was transferred to the Honorable Kari A. Dooley on April 19, 2023. ECF No. 8.

The Police and City Defendants filed separate motions for summary judgment and a joint Rule 56(a)1 statement, along with supporting exhibits, on December 30, 2024. ECF Nos. 60-66. The case was transferred to me on January 6, 2025. ECF No. 67. From that point, there was no action on the docket for six months, including no response from Wezenter to either of the summary judgment motions.

After Wezenter[6] called the Court to ask about the lack of progress on her case, I held a status conference on July 18, 2025. ECF No. 70. After the conference, I ordered Wezenter to file a motion for extension *nunc pro tunc* explaining the reasons for the delay, and to file an opposition to the motions for summary judgment. ECF No. 71. Wezenter filed the motion for extension of time and her objection to the motions for summary judgment on July 25, 2025. ECF Nos. 73-74. On July 28, 2025, I ordered Wezenter to file a 56(a)2 statement in accordance with the Local Rules, ECF No. 75, which Wezenter subsequently did on August 6, 2025, Pl.'s 56(a)2 St. The Police Defendants filed an objection to the motion for extension of time on August 7. ECF No. 78. Defendants also filed reply briefs to Wezenter's opposition that same day. ECF Nos. 79-80. At my request, on February 26, 2026, Defendants electronically resubmitted video exhibits that had initially been filed in physical form. ECF No. 81.

## II.    LEGAL STANDARD

The Court will grant a motion for summary judgment if the record shows "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a

---

[6] Wezenter herself called the Court. The Court notified the attorneys of the call and convened the status conference.

genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The nonmoving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. The moving party may satisfy this burden by pointing out to the district court an absence of evidence to support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*

When deciding a motion for summary judgment, the Court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, the Court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [her] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir.

2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the nonmoving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.    **DISCUSSION**

In this action, Wezenter brings ten claims against the various Defendants. Except for the counts against the City Defendants, Wezenter does not identify which individual officers were allegedly involved in each claim, instead referring collectively to "defendants" in each count alleged against the Police Defendants.

Count One alleges a claim pursuant to 42 U.S.C. § 1983[7] for unlawful search and seizure in violation of the Fourth Amendment stemming from the entry and search of Wezenter's home by the Police Defendants. Am. Compl. ¶¶ 1-31. Count One asserts that the warrant "was constitutionally deficient in that it did not particularly describe the place to be searched," *id.* ¶ 18, and the "warrant lacked probable cause to search the plaintiff's residence."

Count Two alleges a violation of the Fourth Amendment pursuant to *Franks v. Delaware* against the Police Defendants, asserting that the warrant would not have been issued

---

[7] Wezenter appears to bring Count One under both § 1983 and § 1982. Am. Compl. ¶ 9. However, I note that a claim under § 1982 requires proof of (1) a defendant's racial animus, (2) intentional discrimination, and (3) that a defendant deprived plaintiff of her rights because of her race. *Garg v. Albany Indus. Dev. Agency*, 899 F. Supp. 961, 968 (N.D.N.Y. 1995)*, aff'd sub nom.*, *Garg v. City of Albany*, 104 F.3d 351 (2d Cir. 1996). Wezenter did not raise any claim of racial animus in her Amended Complaint. Moreover, Defendants have not addressed this issue in their summary judgment motions and Wezenter did not defend it in her objection to summary judgment. I therefore deem any § 1982 claim abandoned. *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

"[w]ithout the deliberate falsehood or reckless disregard of facts," and with a "correct description and or more accurate description of the unit to be searched." *Id.* ¶¶ 32-34.

Count Three alleges that the Police Defendants committed violations of the Connecticut Constitution. *Id.* ¶ 35.

Count Four, brought against the City Defendants, alleges § 1983 claims under *Monell* for failure to train and supervise the Police Defendants. *Id.* ¶¶ 35-45.[8]

Finally, Counts Five through Ten allege that the Defendants committed a number of torts against Wezenter, namely negligent infliction of emotional distress, assault, battery, negligence, invasion of privacy, and false imprisonment. *Id.* ¶¶ 46-51; at 7-10.[9]

Defendants move for summary judgment on all counts. Wezenter also brings a *nunc pro tunc* Motion for Extension of Time. I first address the motion to extend and then address the summary judgment motions in turn.

### A.    Motion for Extension of Time

Wezenter's Objection to Defendants' Motions for Summary Judgment was filed on July 25, 2025—more than six months after the deadline for a response to the motion was due, and only after I ordered Wezenter to file her response and a motion for extension. *See* ECF Nos. 63, 64 ("Responses due by 1/21/2025"); ECF No. 71. Wezenter's attorney argues that good cause exists for this extension because, at the time of the filing of the motions for summary judgment, she was experiencing severe health complications that disrupted her

---

[8] Wezenter's Amended Complaint uses a paragraph numbered 35 twice: once in Count Three, and once in Count Four. This usage refers to the paragraph in Count Four.

[9] Wezenter's Amended Complaint uses sequential paragraph numbering up through Count Five, at which point paragraph numbers begin to repeat. I therefore refer to Counts Six through Ten by page number.

ability to litigate this case. ECF No. 73, at 1-2. Defendants object that this is not good cause for a six-month delay and that Wezenter's attorney has not complied with the requirements of Local Rule 7(b). ECF No. 78, at 1-2.

It is true that Wezenter's attorney has not complied with Local Rule 7(b), which requires that all motions for extension "shall be filed at least three (3) business days before the deadline sought to be extended, except in cases in which compelling circumstances warranting an extension arise during the three days before the deadline." D. Conn. L. Civ. R. 7(b)3. Rule 7(b) also requires that any motions filed "fewer than three business days before the deadline" must set forth the reasons why the motion was not filed at least three business days before the deadline. *Id.*

Here, Wezenter's motion sets forth good cause, both for the extension request and the delay in filing that request—namely, a severe medical emergency. ECF No. 73, at 1-2. I am aware that the 6-month delay in this case is particularly extreme. But the prejudice suffered by Defendants is minimal; the court would have needed to decide the motion for summary judgment regardless, and a grant of summary judgment for failure to defend or a refusal to allow Wezenter to defend the motions would be a particularly harsh remedy not in the interest of justice.

The court therefore grants Wezenter's Motion to Extend *nunc pro tunc*.

## B.    City Defendants

Count Four asserts a *Monell* claim for failure to train and supervise. This Count contains allegations against Defendants City of New Haven, Justin Elicker, and Karl Jacobson. Am. Compl. ¶¶ 35-45. Wezenter does not name the City Defendants in Counts One, Two, and

11

Three. It appears that the City Defendants are incorporated by reference into Counts Five through Ten, all of which allege tort claims. *Id.* ¶¶ 46-51; at 7-10.

       1.     *Monell* **Claim**

       a.     **Elicker and Jacobson**

The City Defendants argue that "[t]here are no allegations in Plaintiff's Second Amended Complaint, nor can Plaintiff proffer any evidence, that Chief Jacobson or Mayor Elicker participated" in the raid on the morning of April 6, 2023, or any prior or subsequent investigations leading to or stemming from the raid. ECF No. 61, at 7-8. They further argue that without any evidence of personal involvement in the events alleged, Wezenter cannot maintain a cause of action against either Elicker or Jacobson. *Id.* at 7. Wezenter does not deny or in any way address these arguments. I agree with the Defendants.

An individual may be held liable under § 1983 only if that individual is "personally involved in the alleged deprivation." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)). "[B]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Crenshaw v. N. Y. C. Hous. Auth.*, 697 Fed. App'x 726, 730 (2d Cir. 2017) (summary order) (holding that § 1983 claim was insufficient at summary judgment where the alleged acts were not supported by evidence).

Here, Wezenter has provided no evidence that Defendants Elicker and Jacobson were personally involved in the raid itself or any failure to train or supervise that may have resulted in the raid; she has admitted all of Defendants' factual contentions to this effect, which are in

turn backed by sworn affidavits. Pl.'s 56(a)2 St. ¶¶ 47-56; ECF Nos. 62, 65. The fact that Defendants Elicker and Jacobson are "policy maker[s] and decision maker[s]" of the City of New Haven and the New Haven Police Department, Am. Compl. ¶¶ 36, 38, is irrelevant without some evidence of personal involvement, because vicarious liability is insufficient to state a § 1983 claim under *Monell*. *See Iqbal*, 556 U.S. at 676. No such evidence is in the record before me.

Because Wezenter has raised no genuine issue of material fact as to the lack of personal involvement of Elicker and Jacobson in the purported constitutional violations underlying the *Monell* claim, I therefore grant summary judgment to Elicker and Jacobson as to Count Four.

### b.    City of New Haven

Defendants also argue that Wezenter has shown no genuine dispute of material fact as to whether Defendant City of New Haven failed to properly train or supervise its personnel for the purpose of establishing municipal liability under *Monell*. ECF No. 61, 8-14. Wezenter does not address these arguments in her objection. I agree with the Defendants.

"A municipality or other local government may be liable under [42 U.S.C. § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. N.Y.C. Dept. of Soc. Servs.,* 436 U.S. 658, 692 (1978)). But local governments are responsible only for their own illegal acts and are not vicariously liable under § 1983 for the actions of their employees. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986).

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick*, 563 U.S. at 60 (quoting *Monell,* 436 U.S. at 691). "Courts have recognized that '[a] plaintiff may satisfy

13

the policy or custom prong in one of four ways: by alleging the existence of (1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.'" *Doe by & through Boyd v. Smereczynsky*, No. 3:16-cv-394(MPS), 2017 WL 1100426, *2 (D. Conn. Mar. 23, 2017) (quoting *Aquino v. City of New York*, No. 1:16-cv-1577-GHW, 2017 WL 384354, at *3 (S.D.N.Y. Jan. 25, 2017)).

In the Amended Complaint, Wezenter alleges that "upon information and belief, Defendants City of New Haven, Elicker, and Jacobson failed to comply with the requisite training and continuing training requirements." Am. Compl. ¶ 45. Beyond this conclusory assertion, Wezenter has produced no evidence of any kind related to her *Monell* claim. This is insufficient to survive a motion for summary judgment. *See Bradshaw v. City of New York*, 855 Fed. App'x 6, 11 n.2 (2d Cir. 2021) (summary order) (finding a *Monell* claim insufficient at summary judgment where the plaintiff "has not put forward evidence . . . to support his conclusory allegation").

The only piece of information relevant to this claim is within the New Haven Police Department ("NHPD") Internal Affairs Investigation report about the raid provided by Defendants. That report states that at the time of the incident, NHPD "did not have a General Order or Policy which governs search warrants." ECF No. 66-6, at 20. But this statement,

14

without more, in no way speaks to the deliberate indifference[10] required for a "failure to train or supervise" violation under *Monell*. Wezenter does not note this lack of policy, connect it to her allegation regarding the failure to train or supervise, or elaborate on it in any other way, nor does she make any other argument or point to any other evidence that might support a *Monell* claim.

I therefore grant summary judgment to the City of New Haven on Count Four.

### 2.    State Claims

Because I grant summary judgment to the City Defendants on Count Four, the only federal claim alleged against these Defendants, I decline to exercise supplemental jurisdiction over the remaining state law claims in Counts Five through Ten. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Taylor v. Plan. & Zoning Comm'n for Westport*, No. 3:21cv1023(JBA), 2023 WL 5507842, at *6 (D. Conn. Aug. 25, 2023) ("When all federal claims have been dismissed, a federal court 'must reassess its jurisdiction over the case by considering several factors—judicial economy, convenience, fairness, and comity,'" and "'[i]f [all] federal claims are dismissed before trial . . . the state claims should be dismissed as well.'") (quoting *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004)) (citations omitted).

---

[10] The Second Circuit "has identified three requirements before a municipality's failure to train or supervise constitutes deliberate indifference": (1) "a policymaker knows to a moral certainty that [his] employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotation marks omitted).

I therefore grant the City Defendants' Motion for Summary Judgment in its entirety.

### C.    Police Defendants

#### 1.    Perimeter Team

##### a.    Conceicao, Paxton, Stone, and Ofiara

Defendants argue that Defendants Romano, Conceicao, Paxton, Stone, and Ofiara did not enter Wezenter's apartment or interact with her in any way, and that as a result, they are not liable under § 1983 for any Fourth Amendment violation. ECF No. 63-1, at 15-16. Wezenter does not address this argument or provide additional detail on the role played by any of these officers in the alleged constitutional deprivations. Pl.'s 56(a)2 St. ¶¶ 14-15 (admitting that Defendants Romano, Paxton, Stone, Ofiara, and Conceicao never entered Wezenter's apartment during the search and instead were "assigned to the perimeter of the building"). With the exception of Defendant Romano, I agree with Defendants.

As described above, an individual may be held liable under § 1983 only if that individual is "personally involved in the alleged deprivation." *Littlejohn*, 795 F.3d at 314. The only alleged deprivation here is the search and seizure, in which certain officers entered Wezenter's apartment and detained her. The evidence before me, including Soto's investigative report, the warrant application, and body cam footage, supports Defendants' contention that officers Paxton, Stone, Ofiara, and Conceicao did not participate in the initial investigation, were not affiants on the warrant application, and never entered Wezenter's apartment or detained her. ECF Nos. 66-1, 66-7, 66-9. Wezenter also admits that these officers never entered her apartment at the time of the search and seizure. Pl.'s 56(a)2 St. ¶ 15.

As a result, Wezenter has not shown a genuine dispute of material fact that these officers were involved in the search and seizure alleged in this case. *See Crandall v. David*,

457 Fed. App'x 56, 58-59 (2d Cir. 2012) (summary order) (finding no genuine dispute of material fact as to personal involvement for § 1983 seizure claim where officer was not present at or personally involved in the seizure). These officers therefore cannot be liable for the Fourth Amendment claim in Count One, and I grant summary judgment for Paxton, Stone, Ofiara, and Conceicao on that Count.

### b.       Liability of Detective Romano

Neither party has addressed Detective Romano's role as co-affiant of the search warrant. *See* ECF No. 66-7 (search warrant application bearing the signatures of Soto and Romano). The NHPD internal affairs report notes that the investigator

> asked Detective Romano if she was aware of what steps were taken to corroborate the location of the search warrant. Detective Romano stated Detective Soto performed a Comcast search as well as an Accurint Search. Detective Romano stated that Detective Soto went to the address to confirm which door for the target apartment but that there was no answer. Detective Romano stated that she felt confident that Detective Soto did his due diligence so she agreed to be the co affiant for the search warrant.

ECF No. 66-6, at 14. Neither party disputes Romano's statement.

"The requirement in the law of the oath of a responsible public officer to the showing of the probable cause was to make *the affiant* legally responsible for any statements of fact relied upon by the Judge who issues the warrant." *United States v. Tortorello*, 342 F. Supp. 1029, 1035 (S.D.N.Y. 1972) (emphasis added); *see also United States v. McKenzie*, 13 F.4th 223, 236 (2d Cir. 2021) (stating, in the context of a *Franks* violation, that "[t]he Supreme Court has interpreted the warrant clause as containing an implicit guarantee that the information in a warrant application is 'truthful' in the sense that the information put forth is believed or appropriately accepted by *the affiant* as true.") (internal quotation marks and citation omitted) (emphasis added). Although she did not participate directly in Soto's investigation, by signing

17

the warrant application as a co-affiant Romano "became responsible for the contents of the application and the consequences thereof." *Freedman v. Am. Online, Inc.*, 303 F. Supp. 2d 121, 123 n.5 (D. Conn. 2004) (citing *Tortorello*, 342 F. Supp at 1035). I will therefore consider the parties' arguments regarding Soto and the sufficiency of the warrant in Counts One and Two to include Romano.

### 2. Detective Soto's Investigation

#### a. Count Two: *Franks* Violation

Count Two alleges that the "conduct of the defendants constituted a 'Franks violation'" and that, "[w]ithout the deliberate falsehood or reckless disregard of facts" and with "the correct description and or more accurate description of the unit to be searched, a magistrate would not have issued a search and seizure warrant" for Wezenter's apartment. Am. Compl. ¶¶ 32-33. Defendants argue that "Detective Soto was the only defendant intimately tied to the original investigation and preparation of the search warrant application," and thus the *Franks* claim cannot be directed at the other Police Defendants. ECF No. 63-1, 22. They also argue that Soto's mistake was a "reasonable and honest" one based on the information he had available, and not a knowing, intentional, or reckless falsehood or omission as required under *Franks*. *Id.* at 21-22. Wezenter does not specifically address the *Franks* claim in her objection, other than faulting Soto for not conducting a more thorough investigation and stating that Soto "merely guessed which door belonged to Mr. Yergeau." ECF No. 74, 7-8.

A § 1983 plaintiff challenging a warrant on the basis of a *Franks* violation must (1) show that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and (2) that such statements or omissions were necessary to the finding of probable cause. *See Franks v.*

*Delaware*, 438 U.S. 154, 171-72 (1978); *Golino v. City of New Haven*, 950 F.2d 864, 870-71 (2d Cir. 1991). "A section 1983 plaintiff challenging a warrant on this basis must make the same showing that is required at a suppression hearing under *Franks v. Delaware*." *Velardi v. Walsh*, 40 F.3d 569, 573 (2d. Cir. 1994) (citation omitted). To survive a motion for summary judgment, a plaintiff must "provide sufficient evidence that a reasonable jury could find for him under this *Franks* standard." *Golino v. City of New Haven*, 761 F. Supp. 962, 968 (D. Conn. 1991), *aff'd*, 950 F.2d 864 (2d Cir. 1991).

"A reckless disregard for the truth exists when the 'affiant in fact entertained serious doubts as to the truth of his allegations,' . . . [and] a factfinder may infer reckless disregard from circumstances evincing 'obvious reasons to doubt the veracity' of the allegations." *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990) (citations omitted) (alterations in original) (followed in *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir.1991)). "Disputed issues are not material if, after crossing out any allegedly false information and supplying any omitted facts, the 'corrected affidavit' would have supported a finding of probable cause." *Velardi*, 40 F.3d at 573 (quoting *Soares v. State of Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993)). "Unsupported conclusory allegations of falsehood or material omission cannot support a *Franks* challenge; to mandate a hearing, the plaintiff must make specific allegations accompanied by an offer of proof." *Id.* (citing *Franks*, 438 U.S. at 171).

Wezenter has not alleged any facts suggesting that Soto knowingly or intentionally made any false statements or misrepresentations on his warrant affidavit, and none appear in the record. Instead, Wezenter appears to argue that Soto exhibited reckless disregard for the truth when he failed to more thoroughly investigate which door actually led to Yergeau's apartment. ECF No. 74, at 7-8. Defendants argue that Soto's representations on the warrant

19

affidavit about the location of Yergeau's apartment, although ultimately incorrect, were not made with reckless disregard for the truth because Soto made a substantial effort to investigate the location of Yergeau's apartment and reached a reasonable conclusion based on the evidence available to him at the time. ECF No. 63-1, at 21-22. I agree with Defendants.

Soto made clear efforts, via online searches corroborated by direct in-person surveillance, to verify the location of Yergeau's apartment. Pl.'s 56(a)2 St. ¶¶ 2-4; ECF No. 66-1, at 5. Soto entered the premises himself, recorded footage of the interior of the building, knocked on all three interior doors, and took pictures of Wezenter and Yergeau's mailboxes. ECF No. 66-1, at 5.; ECF No. 66-9, Ex. B; ECF Nos. 66-2, 66-3.

"This case is quite different from those in which the officer signing the affidavit supporting the search warrant made no effort to verify the accuracy of an address at which allegedly illegal activity was taking place." *Jones v. Bridgeport*, No. CIV.3:99CV1523(CFD), 2002 WL 272397, at *7 (D. Conn. Feb. 19, 2002) (citing *Gonzalez v. Romanisko*, 744 F. Supp. 95, 98-99 (M.D. Pa. 1990)). As in *Jones*, here Soto "gathered significant evidence" of illegal activity in Unit 2. *Id.* Indeed, Soto went beyond the investigators in Jones, actually entering the premises himself to confirm his findings. It is also notable that Wezenter's mailbox was labelled "Apt 1" and Yergeau's "#2"; as Defendants argue, this circumstance in particular suggests that Soto's mistake was supported by the evidence he had available to him after investigation, and the mistake was therefore "reasonable and honest." ECF No. 63-1, at 22.

Given the undisputed facts before me, Soto's failure to follow up that in-person investigation to fully confirm which unit belonged to Yergeau was therefore, at most, negligence—"and negligent or innocent mistakes do not violate the Fourth Amendment." *Jones*, 2002 WL 272397, at *7. Wezenter has identified no genuine dispute of material fact as

20

to the scope and extent of Soto's investigation, or how he verified his information; she has only alleged that he could have done more, and that is insufficient evidence for the alleged *Franks* violation to survive summary judgment. *See Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 395, 402 (S.D.N.Y. 2009) (rejecting plaintiff's claim that police should have conducted a further investigation before presenting warrant application in case where the warrant "bore the wrong apartment number, apparently because a confidential informant gave the police the wrong apartment number"); *Hunt v. City of Toledo L. Dep't*, 881 F. Supp. 2d 854, 877 (N.D. Ohio 2012) (holding that "the record does not reveal any evidence that a jury could look to that would allow it to conclude that [the investigator] either knowingly misidentified 2082 or was wanton or reckless in the manner in which he gathered evidence and reached the conclusion that 2082 was the site of the criminal activity"); *Michalik v. Hermann*, No. Civ.A. 99-3496, 2003 WL 79295, at *4 (E.D. La. Jan. 8, 2003) (stating that "the failure to investigate a matter fully or to exhaust every possible lead rarely suggests a knowing or reckless disregard for the truth but rather suggests negligence at most.") (internal quotation marks omitted).[11]  I therefore grant summary judgment to all individual Defendants on Count Two.

---

[11] As to the second part of the *Franks* test, drawing all inferences in favor of the nonmoving party, one could argue that Soto's failure to mention further details about the layout of the building and the lack of markings on all apartment doors was material to the determination of probable cause and that a revised warrant indicating those details might have prevented a neutral magistrate from signing the warrant. *See Velardi*, 40 F.3d at 573. But, because I conclude that Soto's conclusion about the location of Yergeau's apartment was not reckless, I do not reach the question of whether the omission of details in the warrant was material.

### b.       Count One: Particularity Requirement for Warrant and Probable Cause

Count One alleges unlawful search and seizure in violation of the Fourth Amendment. In particular, Count One asserts that the warrant did not particularly describe the place to be searched and that the search of Wezenter's apartment was not supported by probable cause. Am. Compl. ¶¶ 1-31.

The Fourth Amendment of the U.S. Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Defendants argue that the search of Wezenter's apartment was constitutional under the Fourth Amendment. They maintain that the particularity requirement was met because the warrant accurately described the apartment that Soto *believed* was Yergeau's apartment. ECF No. 63-1, at 13. Although they admit that this belief was mistaken, they argue that Soto's mistake was "objectively understandable and reasonable" and therefore does not rise to the level of a constitutional violation. *Id*. at 13-14. Moreover, Defendants argue that "[e]ven if the Court were to find that the defendant officers violated the plaintiff's constitutional rights, a proposition the defendants vehemently contest, they are still immune from liability" on the basis of qualified immunity. ECF 63-1, at 23.

Wezenter challenges whether the Defendants met the Fourth Amendment's particularity requirement. ECF No. 74, 6-7 ("In the instant case, Wezenter alleges the warrant is deficient in failing to state with particularity the place to be searched."). She also asserts that

"the place searched was not in any way affiliated with the intended target, Timothy Yergeau." *Id.* at 7. Wezenter's argument seems to rest on two premises: first, the uncontroverted fact that Defendants raided her apartment, not the home of Yergeau, and second, that Soto, despite personally viewing the internal layout of 590 East Street, and thus affirmatively knowing that there were no internal markings showing which apartment was #2, did not return to clarify which apartment belonged to Yergeau. ECF No. 74, at 6-8.

Defendants rely on the Supreme Court's holding in *Maryland v. Garrison*, 480 U.S. 79 (1987). In that case, police officers obtained and executed a search warrant for an individual and his apartment, but the warrant incorrectly described the entire third floor as the Defendant's apartment, based on an investigation which included "information obtained from a reliable informant, an exterior examination of the three-story building . . . , and an inquiry of the utility company." *Id.* at 80-81. The third floor actually contained two apartments, and the police searched the wrong one. *Id.* at 85-88. The Court in *Garrison* separated its analysis into two distinct but related issues as to particularity: first, whether the ambiguous warrant was valid, and second, whether the execution of that warrant was constitutional. *Id*. at 85-86.

Regarding the particularity requirement, the Court in *Garrison* held that "if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude respondent's apartment from the scope of the requested warrant." *Id.* at 85. However, the Court concluded that "we must judge the constitutionality of their conduct in light of the information available to them at the time they acted" and on the basis of that information, the warrant was "valid when it issued." *Id.* at 86. The issue in *Garrison*, whether an overbroad warrant was nonetheless valid, is distinguishable from the factual situation here; Soto's description of the

search warrant target was not overbroad, it was closely drawn but simply mistaken.[12] Thus, I do not find that *Garrison* directly controls the particularity analysis here. Nevertheless, I conclude that Wezenter cannot prevail on her particularity argument because the warrant did in fact particularly—albeit mistakenly—describe the place to be searched. The warrant was not defective for its lack of specificity.

Wezenter's brief could be read as asserting an additional argument that Soto should have known that executing a search of the third floor apartment was not supported by probable cause. In other words, it might be argued that although Soto had obtained a warrant to search the third floor apartment, he should have realized there was too much uncertainty about whether that apartment belonged to Yergeau. ECF No. 74, at 7 ("Was Detective Soto's mistake reasonable? . . . [A]dditional surveillance could easily have minimized the damage as it likely would have resulted in the execution of the warrant at the proper residence. Yet, Detective Soto merely guessed which door belonged to Mr. Yergeau and proceeded with a forced entry and search of a unit, Wezenter's unit, which was error and resulted in an unlawful search."). However, with respect to this argument, I conclude that Soto's actions are protected by qualified immunity.

---

[12] I note that, in response to the particularity issue raised by Wezenter, Defendants cite a number of cases for the proposition that partial misdescriptions and technical errors are not necessarily fatal to search warrants. ECF No. 63-1 at 12. But the relevant discussion in these cases largely relates to the issue of qualified immunity, and not to the particularity analysis under the Fourth Amendment. *See Velardi*, 40 F.3d at 575 ("Whether or not the Fourth Amendment's particularity requirement would have been satisfied on these facts . . . [is] a matter we do not decide, [because] we conclude that the defendants' qualified immunity shields them from liability."); *Jones*, 2002 WL 272397, at *5 (determining whether police officers are entitled to qualified immunity for warrants issued without probable cause).

Qualified immunity applies in the § 1983 context when an official's challenged actions were taken in the course of their official duties while performing discretionary functions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Immunity attaches only "insofar as [the officer's challenged] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Linton v. Zorn*, 135 F.4th 19, 30 (2d Cir. 2025) (quoting *Harlow*, 457 U.S. at 818). The Second Circuit engages "in a two-step inquiry to determine whether qualified immunity is appropriate. Qualified immunity applies unless (1) the official violated the plaintiff's statutory or constitutional right, and (2) that right was clearly established at the time of the challenged conduct." *Eaton v. Estabrook*, 144 F.4th 80, 90 (2d Cir. 2025) (internal quotation marks omitted). "A right is clearly established if the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Linton*, 135 F.4th at 32 (internal quotation marks omitted) (alteration in original). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 367 (2d Cir. 2021) (quoting *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004)).

Even assuming *arguendo* that Soto improperly concluded probable cause existed to search the third floor apartment, and despite the murky factual circumstances about why the investigation ended without additional follow-up, Wezenter has not pointed to any cases in the Supreme Court or Second Circuit indicating that she had a clearly established right to ensure that Soto conducted a more thorough investigation to prevent a raid on the wrong apartment. In fact, courts have found that qualified immunity protects police executing warrants in similar situations. *See Jones,* 2002 WL 272397, at *2, 4 (holding that "it was objectively reasonable

25

for the officers to have believed that their acts did not violate Jones' right not to have her home searched without probable cause" where "the affidavit and warrant incorrectly named Apartment 216 as the intended subject of the search and the place where illegal narcotics activity was taking place" but "[t]hat activity, and the sales to the confidential informant, had actually occurred in Apartment 214"); *Samuels v. Smith*, 839 F. Supp. 959, 967 (D. Conn. 1993). (finding qualified immunity where "officers reasonably believed they were properly executing a narcotics-related search and seizure warrant and that they terminated their activities and departed the plaintiff's apartment once they realized their mistake" and where "[t]hey did not physically abuse the plaintiff nor did they subject her to prolonged detention").

Indeed, a reasonable police officer could read *Garrison* as requiring a sufficient investigation, but also as recognizing "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Garrison*, 480 U.S. at 87. I note that this specific language in *Garrison* refers to refers to the execution of the warrant and not the investigation preceding it:

> The question whether the execution of the warrant violated respondent's constitutional right to be secure in his home is somewhat less clear. . . . If the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, and thus had been aware of the error in the warrant, they would have been obligated to limit their search to McWebb's apartment. Moreover, as the officers recognized, they were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant. The officers' conduct and the limits of the search were based on the information available as the search proceeded. While the purposes justifying a police search strictly limit the permissible extent of the search, the Court has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants.

26

*Id.* at 86-87. Nonetheless, a reasonable reading of *Garrison* might allow for some "honest mistakes" in the investigatory phase, and no precedent in this Circuit appears to clearly say otherwise. *Id.* at 85 n.10 (stating that "[a]rguments can certainly be made that the police in this case should have been able to ascertain that there was more than one apartment on the third floor of this building," but noting that "the record also establishes that [the investigating officer] made specific inquiries to determine the identity of the occupants of the third-floor premises" and that this evidence, in addition to state court determinations of reasonable belief, were sufficient for the Court to "accept that conclusion for the purpose of our decision").

The factual circumstances of this case, especially the layout of 590 East Street, weigh in favor of qualified immunity. As Wezenter admitted, both at the time of the raid and in her deposition, the internal layout of the common area at 590 East Street was confusing and unclear. *See* ECF No. 66-4, at 65-67; ECF No. 66-9, Ex. I, at 0:14:52-0:15:10 (body cam footage). There were no internal numbers marking the units and Wezenter's mailbox was particularly misleading, identifying her unit as the non-existent "Apt 1." ECF No. 66-2. To hold that qualified immunity does not adhere, on this record, would be to second guess the kind of difficult decisions involved in police investigation and enforcement that qualified immunity is meant to protect.

Because Wezenter's right to a more comprehensive investigation preceding the warrant execution was not clearly established at the time of the raid, Soto is therefore protected by qualified immunity on Count One as it relates to the underlying investigation and decision to search the apartment.  Finally, because Romano was not part of the entry team and thus not responsible for any potential violation in the execution of the warrant, I grant summary judgment for Romano on Count One.

27

### 3.    Count One: Execution of the Warrant

Defendants further argue that the rest of the entry team, Defendants Marshall, Decarvalho, Folch, Moore, and Boyle, are entitled to qualified immunity because they reasonably and justifiably relied on the warrant when they executed the search at Wezenter's residence. ECF No. 63-1, at 16-19. Defendants argue that Wezenter has not provided any evidence that the entry team had knowledge of Soto's mistake, and therefore that they were "entitled to reasonably rely on Detective Soto's determination that the search was lawful and that, based on his surveillance, they were entering the proper residence." *Id.* at 18. Defendants also argue that they acted reasonably once inside Wezenter's apartment, briefly handcuffing Wezenter and detaining her daughter before realizing their mistake and exiting the apartment. ECF No. 63-1, at 19-20. Wezenter argues that the entry team's behavior once inside the apartment—specifically that they did not immediately inquire about Yergeau's whereabouts upon entry—and the failure to conduct additional surveillance make their conduct unreasonable. ECF No. 74, at 8.

Marshall, Decarvalho, Folch, Moore, and Boyle were not involved in the investigation and did not sign the warrant; their only involvement was their direct participation in the raid on Wezenter's apartment. The question relevant to these officers is whether their reliance on the warrant was objectively reasonable and whether they acted reasonably once inside the apartment. The Second Circuit has held that:

> A police officer who relies in good faith on a warrant issued by a neutral and detached magistrate upon a finding of probable cause is presumptively shielded by qualified immunity from personal liability for damages. Police activity conducted pursuant to a warrant rarely will require any deep inquiry into reasonableness because a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith. However, "the officer's reliance on the magistrate's probable-cause determination and on the

28

technical sufficiency of the warrant he issues must be objectively reasonable." The court's inquiry into reasonableness is limited to determining whether a reasonably well-trained officer would have known that the warrants were illegal despite the magistrate's authorization.

*Simms v. Vill. of Albion*, 115 F.3d 1098, 1106 (2d Cir. 1997) (citations omitted).

Here, there is no indication that the reliance on the warrant was unreasonable. The warrant particularly described the common hallway and directed the entry team to the third-floor door; when they entered the building, it matched precisely the description provided by Soto and approved by a state judge. *See* ECF No. 66-7, at 2. Once again, the particularly confusing layout of the common area and the mislabeling of the mailboxes at 590 East Street, undisputed by the parties, provided no indication to a reasonably well-trained officer that the warrant might be insufficient under the Fourth Amendment. *Simms*, 115 F.3d at 1106; *see also Garrison*, 480 U.S. at 88 ("[T]he validity of the search of respondent's apartment pursuant to a warrant authorizing the search of the entire third floor depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable. Here it unquestionably was. The objective facts available to the officers at the time suggested no distinction between [the appellee's] apartment and the third-floor premises.").

Moreover, the behavior of all the members of the entry team, including Soto, during the search and after they discovered their mistake was also clearly reasonable under the circumstances. The officers knocked and announced themselves before breaching the door (even if Wezenter did not hear them). Pl.'s 56(a)2 St. ¶ 17. Upon entering the apartment, the officers conducted a sweep, looking for the target of the search warrant and ensuring their own safety, which was permissible and reasonable under current law. *Id.* ¶¶ 19-23; *see Velardi*, 40 F.3d at 576. Wezenter was handcuffed for less than two minutes; after asking Wezenter and

29

her daughter about the location of Yergeau, the officers quickly realized that they were in the wrong apartment, uncuffed Wezenter, determined Yergeau's location, and left the apartment (with the exception of Officer Boyle). Pl.'s 56(a)2 St. ¶¶ 22-25; *see Garrison*, 480 U.S. at 87. Lieutenant Marshall subsequently returned to explain the situation and profusely apologized to Wezenter and her daughter. Pl.'s 56(a)2 St. ¶¶ 27-31. Marshall also agreed to fix Wezenter's door and left two detectives on site following the raid while Wezenter waited for the landlord to conduct emergency repairs. *Id.* ¶¶ 32, 39, 41-42. Thus, apart from the initial mistake of identifying the incorrect door in the warrant, the behavior of the entry team during and after the execution of the warrant on Wezenter's apartment was appropriate and reasonable for the purpose of qualified immunity.

Wezenter's only response is to allege that "entering the home not owned or occupied by an intended target, and immediately handcuffing its occupants" was "egregious misconduct" and effectively *per se* unreasonable. ECF No. 74, at 8. It is clear that this experience was extremely distressing to Wezenter and her daughter, as well it would be for anyone whose home has been invaded by armed men early in the morning without warning and by mistake. But the law protects police officers who make "honest mistakes . . . in the dangerous and difficult process of making arrests and executing search warrants," *Garrison*, 480 U.S. at 87, and nothing on the record here suggests that this was anything other than an honest mistake, facilitated by a confusingly laid-out building and a poorly considered system for numbering and labelling apartments.

Thus, given the information known to the officers at the execution of the search warrant, and their prompt corrective conduct after they realized their mistake, I find that Soto, Marshall,

Decarvalho, Folch, Moore, and Boyle are entitled to qualified immunity and I therefore grant summary judgment for those Defendants on Count One.

### 4.      State Law Claims

Having dismissed all federal claims against the individual Defendants, I decline to exercise supplemental jurisdiction over the state constitutional and tort law claims in Count Three and Counts Five through Ten. *See Taylor*, 2023 WL 5507842, at *6.

## IV.      **CONCLUSION**

For the foregoing reasons, Wezenter's Motion for Extension of Time is hereby granted. I also grant both of Defendants' Motions for Summary Judgment in their entirety.

**SO ORDERED.**

New Haven, Connecticut
March 19, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

31